May I please the Court, Yves Cervantes, for Objectors Frye and Allison. Once again, the District Court erred in finally approving the settlement, ignoring this Court's mandate after the first reversal, failing to address objections, implying an improper presumption of fairness which requires reversal per se. This Court must vacate the settlement. But this time we ask that the Court address on remand the fact that Plaintiff Kim is inadequate and not typical to serve as a class representative. She cannot represent any settlement class. This is necessary in order to avoid a third go-round of a collusive reverse auction settlement. So can I pause you there because this is what most of my questions were about. I was trying, I think you just said on remand that that argument that she can't ever represent a class should be considered. But I was trying to figure out from your brief whether you're asking us to decide adequacy such that it doesn't even need to go back for anything other than an individual resolution of her case. Yes, I'm sorry. Maybe I misspoke. What I meant was when this Court vacates the settlement, which it must, it should instruct the District Court that Plaintiff Kim is not typical and is not adequate to represent a settlement class so that on remand the only thing there is left is an individual action which has been compelled to arbitration at this point. So the last panel of our Court must not have thought that she was not an adequate representative because they did send it back for further consideration. And I think you're asking us to do something more, just decide this for all purposes now. How do we do that consistent with the last panel? Well, the Court did not reach that issue. There were so many other problems with the settlement. The first settlement, it was so clearly collusive with a very high attorney's fee. But you're saying all those things now too, right? So I guess I'm just wondering, I mean, it was implicit in the last ruling that she was adequate or something? The Court did not, the Court doesn't need to reach every issue. There was no, you know, it could have gone back. Any number of things could have happened when it went back. They could have negotiated a different settlement with Plaintiff Candelari. They could have gone to individual arbitration. Oh, I see. Wait, is that still an option, that if they went back, they could have a different class representative? Well, there's another case pending in state court with Plaintiff Candelari. Tinder could certainly settle that class action in state court. So there's, in other words, there are so many different possibilities that the first panel, the fact that it didn't address, it didn't make any ruling one way or the other on many issues that were raised the first time around. The Court doesn't have to address every issue. But now you'd like us to say that Kim is just not an adequate representative. There can never be a settlement class in this case. That would be, again, you could even not address it this time because there are so many other reasons to vacate it. But it seems that it would be much more efficient at this point in time. It would be much more efficient to reach that issue, to rule that Kim is not adequate or typical so that we're not back here a third time. And what is your best argument that we should do that? The best argument for her not being adequate and typical is that, so she's both not typical and not adequate. Typicality says that a plaintiff is not typical if they do not, if there are unique defenses that apply to them that don't apply to the rest of the class. Here, she was compelled to individual arbitration. Tinder concedes that they have no way to prove that 7,345 class members agreed to any kind of arbitration agreement at all. There's 24,000-some class members who Tinder argues agreed to arbitration on a much different stance in 2018 after Candelari had already been decided. There were very good arguments for why that arbitration agreement would not apply under California state law, retroactive, kind of right-stripping agreement. But Kim can't even represent those people because there's no argument that she was subject to that type of arbitration agreement. So she's not typical with respect to those class members. And she's not typical with respect to all 240,000 class members because when she opposed the arbitration, Tinder's motion to compel arbitration, she waived really the strongest arguments that anybody could make, which is formation and unconscionability. She didn't raise unconscionability at all, and her formation argument was not the correct argument that is kind of the browse-wrap argument. And this is not just a matter of kind of litigation strategy that we would have opposed arbitration in a different way than Kim did. She later, after the whole motion had been fully briefed and Tinder had filed a reply brief, then she tried to make the formation argument. So it's not that she doesn't think it's a good argument. She ended up figuring out that that was an argument she should make, but she made it too late after Tinder had already filed the reply brief and the district court specifically held it was waived. So she is in a uniquely weak position. And then you think that these differences create essentially conflicts in the class that cause an adequacy problem. I'm sorry, Your Honor. So you think that these ways in which she's different than the rest of the class also make the strength of her claims and their claims so different that there's essentially a conflict between them for adequacy? It's typicality and adequacy, and with respect to adequacy, somebody who's in a uniquely weak position cannot vigorously represent the class. That's a requirement for adequacy. You need to be able to vigorously represent the class. And what the Supreme Court said in Amchem and what the Ninth Circuit said in Hanlon is somebody who was reduced to only being able to settle and not being able to litigate, that is not having litigation as a threat, is in a uniquely weak position, though almost by definition inadequate. If you can't litigate the case, then you have to take whatever defendant will offer. In essence, for settlement, you have no leverage. For all of the reasons you've indicated, plus others I'm sure you're going to get to, I want to be sure I understand your position in response to my colleague's question, assuming you're right about Kim and she cannot any longer perform the role of class representative, what happens? I gather you're saying you can go back to state with Kendall-Lori, but in federal court, what happens? Anything? Subclasses? What are we talking about here? In federal court, she was compelled to individual arbitration, although she has ostensibly filed a notice of appeal from that, I think under Section 16 of the FAA. It's not actually an immediately appealable order, so she will presumably go to individual arbitration, win or lose, and get that confirmed. And I appreciate that technical, but I'm just saying, if she's done, arguendo, and she can no longer represent the class, then what happens in federal court, if anything? The only thing that happens in federal court is her individual arbitration, which could come back to court to be confirmed or vacated. So we would reverse the order certifying the class. I mean, I guess it's one order, that certify the class and approve the settlement, but you want us to reverse the class certification? Yeah, it was certified for settlement purposes only. Tinder did not agree to certification, so it's certified for settlement purposes only. So if you vacated the settlement, that would include vacating the class certification. It's not, there's sometimes there's cases where first the class is certified, and then there's a settlement, but this was the combined one, which is, again, why heightened scrutiny, in fact, is required for the settlement. And this probably gets to your other arguments, but can you explain why you think that's better for the absent class members, to have this class not certified, the settlement is gone, they don't get this money that the people who filed claims would get? Why is that better for them? Well, this settlement is so weak, I understand the court normally does not reverse the settlement merely because the amount is not enough. And that's not what we're arguing here, because we're arguing there are many other kind of per se reasons that you need to vacate the settlement here. But it is an extremely weak settlement. It's about half a percent of the estimated damages here. And usually, I mean, we've cited cases that say, you know, 5%, something like that is the kind of the threshold down, and when you have a settlement that is so weak, you, courts do approve those when the case is so weak. Here, however, and what this court already ruled on the first time, is that the district court had ignored the fact that this case is in a somewhat stronger position than some other cases, at least in state court, because the condolory opinion there is the law of the case. And so it's the law of the case that settlement class members here, in this case, if the settlement is approved, they're releasing the claims, those valuable claims in state court, and most people in this class are getting exactly zero. There was an extremely onerous claims process here, completely unnecessary. So only 3% of the class even made claims. So there's about 8,000 people who would receive about $300 some dollars each. The other 230,000 are going to get $0. There are also these super likes that will be deposited into the accounts of people who still have Tinder, but that's only about 25% of the class that even still has a Tinder account. So can I, just because we're short on time, so the district court seems to not have agreed with condolory. The most charitable reading of that might be that the district court thought if condolory continues getting litigated, eventually the California Supreme Court will take review and agree with Jaworski and not condolory. Why would that be wrong to think that that might be a prediction? Well, for one thing, again, condolory is, unless it gets all the way up to the California So if they, you know, were worried about that split in authority and they had wanted to take review, they clearly could have taken it on the first go around. They denied review. So that's a very speculative thing for the court, whereas here at this point in time, the plaintiffs have the advantage of the condolory case, which is based on California Supreme Court authority, Marina Park and Corey, specifically. It really follows very specifically the California Supreme Court case in Corey, which ruled that ladies' night discounts were unlawful under the Unruh Act. Very similar and really rejected all those arguments that the Jaworski court went along with have already been rejected by the California Supreme Court. Is it fair to say, then, that the objectors basically are in favor of returning this to the state court and proceeding under condolory? That's correct. Class certification. So unlike this case in which plaintiff took no discovery at all, the condolory case is very in advanced stage. Discovery has been taken. Class certification was fully briefed. But then the court denied without prejudice because of this settlement here. To save any of your time, you're down to not very much. Otherwise, if you have no other... Can I ask one more question? Oh, of course. Of course. So are we past the stage in condolory where there could be any motion to compel arbitration? Like, that's definitely off the table or not? They have not moved to compel arbitration in all these years. I think that at this point, we would have a... I don't think compel arbitration was waived, as they've been litigating for so long. But also, Mr. Condolory subscribed to Tinder very early on before they had the new terms of use, which we, again, we think those new terms of use were not... There was no contract formed in that. Nobody has an arbitration agreement, but Mr. Condolory, in particular, is in that early stage that does not have an arbitration agreement. Very well. I'm going to save the balance of your time then. Thank you. All right. Who's going next? Good morning, Your Honors. May it please the Court? How are you? This is Adrian Bacon for Plaintiff Kim. Okay. Very good. I want to start with this notion of the mandate that was put in place in the Allison Appeal. The Court did not decertify the Kim action in the Allison Appeal. This Court permitted Kim to remain a class representative, allowed the class to remain certified, and so... Wasn't that also a settlement class, so vacating the settlement vacated class certification? Not without an express holding. There was no express holding that the class was ever decertified. We were still class counsel. Kim was still the class representative. These very arguments, which counsel is raising here today, were raised in the prior Kim appeal. From our perspective, this would be taking a second bite at the apple, and there has been... I agree with you that the prior panel did not say, Kim is not typical or adequate, can never be fixed. This could never be certified. The panel definitely didn't say that, but wasn't the document a settlement and class certification all at the same time? So vacating that, making that no longer binding because the contract is gone, the settlement is gone, also gets rid of the class certification? The Allison order doesn't do that, Your Honor. What it does is it says that the Court didn't take a hard look at the indicia of collusion, and it should go back and follow the correct process of doing that, and then we are here today with a new settlement. And so if there was a total tearing up of the contract, perhaps, but there wasn't. They were asking for that to happen. It's to be approved for the class to be certified, right? And so by vacating the approval, wasn't that essentially vacating the class certification? It doesn't say that it was, so I don't think we can go that far. I also want to just point to the merits of the position that counsel is taking. Your Honor, Judge Friedland, you were on the Saucillo v. Mara's case that was just decided a few months ago. That panel rejected the same argument on arguments of adequacy and typicality. It said that the fact that the plaintiff settled this case after the denial of class certification was not inherently suspect. It didn't present unique defenses. What the court said in the Saucillo case, which the original order is the primary authority upon which the objectors base this entire appeal, but the Saucillo 2 case said that by losing a motion to certify the class, which held that the named plaintiff was not a class representative, but that that did not present a unique defense. And we have the same situation here. They can argue that we've waived certain arguments, but there's been no express finding and no position taken by Tinder that we have in fact done so. Those issues are yet to be adjudicated, and we would have to go through either the pending appeal in the Kim case on the challenge to arbitration or alternatively go through the arbitration and then appeal the final judgment. Those issues are yet ripe, and so we don't have any unique defenses, and moreover, the defenses that Kim has with respect to arbitration inform the remainder of the risks for the remainder of the class. But I know what you're talking about is important to your case, but I do want to get your direct response on this. You heard arguments from the objectors, both orally and of course you've seen their briefs, about why Kim is an inadequate representative. They didn't talk about lack of discovery, they didn't talk about failure to include the objectors in settlement, and so on and so on. But with all of the things that are mentioned, why does Kim remain a viable class representative in your opinion? Because she meets the standards. The standard for adequacy is vigorous representation and lack of conflict of interest. I'm sorry, we have a problem with our sound system here, I don't want to chew, but can you get as close to your microphone as possible, please? Absolutely, can you hear me now, your honor? A little better. Thank you. Okay, because she meets the standards set forth under this court. For adequacy, all that's required is vigorous representation. But she didn't vigorously represent. I'm really puzzled, how can you say she vigorously represented? There was virtually no discovery. She waived a bunch of things that were key elements. She didn't include the objectors. I mean, the objectors laid this out. I'm really struggling with in what way she vigorously represented anybody other than herself. Help me with that, please. We informally requested every bit of a discovery that they have in their possession. Everything that they have in their possession, we have as well. And we have all the same information. We have all the same documents. Well, you didn't ask about the status of the various people who were and were not covered by arbitration. We did. That's an essential element of this whole thing. You did? We did. We put that in the record in the original Kim appeal, and that was part of the answer. And what did you find? As I saw, there were like 3.5 hours worth of discovery. Did I miss something? I would have to go back and look at our time records to see what we itemized. But I can say to your honor that we looked at the number of people who signed arbitration agreements and observed the terms and conditions under different scenarios. There are only approximately 7,000 people out of the 240,000 class members who would fall under this limited category that objectors counsel. And you reviewed someone in your office, reviewed those cases to determine whether they were bound by arbitration. I reviewed 0.5 hours. I reviewed them. Your honor, I looked at the prior version of the terms and conditions, and I looked at the modified version of the terms and conditions, and I made a determination that there were different arguments that could be made with respect to a motion to compel. But there was another issue, which is that some of those individuals, including the objectors themselves, entered into a modified sign up agreement after the fact. And many of those individuals might still be compelled to arbitration. How can Kim represent the 7,000 people who didn't have these arbitration agreements? Because she has the same claims as them all. What typicality requires... Let's talk about adequacy. So put typicality aside for a second. How is she adequate to represent those 7,000 people? Because she protected everyone's rights in an equal manner, as is required under the substantive provisions. But if the 7,000 have much stronger claims, then is equal manner fair to them? They don't have stronger claims. They just have a weaker argument that defense counsel would make as to a motion to compel arbitration. The merits of their claims are identical. The substantive claims are identical. And so if this court were to hold that she was not adequate to represent both groups... But they can keep going in candelaria, and it seems like they're winning in candelaria, and they might get a lot of money. So how does that affect your answer? I mean, if they have to go to arbitration, they can't use candelaria as well anyway. I think Mr. Brown would be able to speak to that. I'm not sure that he would agree with Objector's view of how they framed that issue. So I'll let him discuss that. But I would generally say that the underlying claims are identical with respect to every single class member. And that's what the typicality requirement... But as my colleague has suggested, and I won't be able to ask questions, her hands are tied, are they not, with respect to many of the claims that the 7,000-plus other people have. Isn't that true? It's not true. We could win on our appeal. There's no final judgment yet. There's no final determination on that either. But her remedy is in arbitration. She cannot get more than what she gets in arbitration, right? No. That's incorrect. We could reverse the district court's holding on the motion to compel arbitration. The law has also changed since that time. There have been two Ninth Circuit orders, which we've cited in our papers. You're saying she's no longer subject to arbitration? There was a motion to compel. What is a motion? There was an order granting the motion to compel. Are you saying that she is no longer subject to arbitration and that the motion to compel is all done and she's not covered? Is that what you're saying? No. What I'm saying is that that order is not yet final because there's no final judgment in the case. And we still have opportunities to challenge it in many respects. Just like any interim order from any court that hasn't become a final judgment yet, we preserved those defenses on our side and we are litigating those issues. So only be able to argue the things that you've argued so far about the motion to compel, though? Well, we argued formation and we argued unconscionability. So I disagree with the objector's position on that. I think we can still challenge both on appeal. And there are Ninth Circuit cases, including the Berman decision, and that case came out after the decision was issued. So there's a bunch of different mechanisms by which we could revisit that. We could file a reconsideration motion. We could file an appeal. We could do any of those things. We could pursue through the arbitration, wait for a final judgment and then appeal the issue. Any of those things could happen. The point that I'm trying to make is just that Kim hasn't given up the right to do any of those things. And just like this court observed in the Saucio II decision, just because one interim issue was lost doesn't deprive the plaintiff of adequacy. Can I just ask you, you've appealed the award of fees to the objectors and the objectors say that if we reverse the settlement approval that that would moot your appeal on the fees. Do you agree with that? Yes, it would. But we don't think that that's correct. I understand you don't. Okay, very well. Any other questions by my colleague? All right. Who's next? Mr. Brown, right? Yes, Your Honor. Good morning, Donald Brown for Tinder and Match Group. May it please the Court. I don't want to lose sight of the fact that there is a high bar to vacating this settlement. To vacate the settlement, the objectors need to make a strong showing that there was a clear abuse of discretion by Judge Walter in the district court. And Judge Walter did not do that. He recited the correct standards for evaluating a settlement and he applied them. Did he not apply, I know he said something different, but did he not apply the presumption of fairness? Not in the way that this Court has previously been concerned about. Wow. Give me your best argument for that. I'm happy to, Your Honor. He recited the correct standard at the beginning under Rule 23E2. He went through all the collusion factors that troubled this panel or this Court the last time and found that none of those Bluetooth factors are present in the new settlement. And then when evaluating individual factors under the Churchill or Hamlin factors, he in a couple of instances in a string site, he had it parenthetical to a case that mentioned a presumption. That's exactly the situation that was in the recently decided Briseno case. There also, and again, the Ninth Circuit upheld the settlement. The district court judge referred to a presumption when discussing one of the Hamlin factors in upholding the settlement, and what the Ninth Circuit held was that that in and of itself was a reference to a presumption that was limited to one of the factors. It did not permeate the settlement. Because unlike here, the analysis was not overlaid by a presumption. And as this Court said in the Rose case, the concern is if there is a broad presumption of adequacy. And here there was the opposite. Again, the Court started with no presumption and only, again, cited a couple of cases that parenthetically mentioned a presumption. What's your take, and it's kind of an overlay of that, you know, our previous panel dealt with the matter sent it back. Judge Walter seemed to be in love with the dissent in that panel. As you know, the dissent doesn't control in our court, nor in any court that I'm aware of. What's your response to that? Was there a violation of the mandate here? No, Your Honor, because it made sense for Judge Walter to acknowledge the existence of the Jaworski case, for example, the case that conflicts with Kandler. Well, why does that make sense? I mean, is the idea that the California Supreme Court was going to take this case eventually? Well, the California Supreme Court certainly might. I don't think there's any question that the Kandler opinion is an outlier. It's never been favorably cited in any other case. Jaworski has been repeatedly cited favorably. I looked up those citations, though. Jaworski is cited for, like, general propositions. It's not like anyone is following the holding of Jaworski in any of the citations you gave us. Well, none of those cases involved an under 30 discount, but they did involve the analysis that should be undertaken in connection with an undirect analysis. But only in the most general way. I mean, they could have said in any case for that general. It's just boilerplate. Well, but again, there has been no citation whatsoever of the Kandler analysis, the Kandler standard, the purported requirements for a legislative enactment. So what do we do with the earlier denial of review at the Demurra stage by the California Supreme Court? The denial of review by the Supreme Court initially? Yeah. That, again, the Supreme Court's denial of review does not serve as precedent for anything. The Supreme Court is free to review it should the Kandler case resume, which it shouldn't. But if the Kandler case resumes and is litigated to conclusion, there is no impediment whatsoever to ultimately getting a petition to the Supreme Court to resolve that. Is there reason to think that that would be a stronger petition than the Demurra stage one, though, if the point was that there was a conflict with Jaworski? Well, I think it would be if the case were further developed. Because, again, at the time of the first petition for review, it was just at the pleading stage. It might be different if the cases were litigated to conclusion. But the district court didn't say any of that. And so what concerns me is the prior panel said the district court didn't adequately consider Candelari. And then at ER 22, the district court said, although the Ninth Circuit found that the court ignored Candelari's impact, as the dissent pointed out, and he quotes the dissent, and there's another sentence quoting the dissent, then he says, therefore, in determining the strength of plaintiff's case for purposes of granting final approval to the revised settlement, the court has carefully considered the impact of Candelari. So the way I read that is it's not, you know, I'm finding something new and different. It's he's just pointing back to things that were already before the prior panel that were already in the dissent and saying, you know, therefore, I reach a conclusion different from what the prior panel had said. So how do you read that as anything other than just outright defiance of what the prior panel said? Well, I think because as part of the court's analysis, it actually looked at what's going on in the cases. For example, 95 percent of the Candelari, the purported Candelari class and the Kim class would be compelled to arbitration. So right away, any sort of broad-based benefit of the Candelari opinion, which again we think is being overstated, 95 percent of this settling class would be compelled to arbitration. So what does that do as far as the impact of the Candelari case? It eliminates any notion that there is a potential $1 billion in liability out there. That's a fantasy. There has never been any case in California or anywhere in the country where damages have been awarded based upon the failure to get an age based discount. So can you explain when the motion to compel arbitration would happen in Candelari and why it hasn't happened yet? I'm a little confused about the state procedure, about why, because I understood there was no motion to compel arbitration there.  Yes, there was no motion to compel arbitration as to Candelari's initial purchase of Tinder Plus, because that purchase happened prior to Tinder's adoption of the sign-and-wrap method. So Candelari would not under any circumstances be subject to arbitration, is that what you're saying? No, that is not true, Your Honor. Because in addition to Tinder Plus, there are purchasers of Tinder Gold who are members of the settlement class. There are 70,000 members of this class who only purchase Tinder Gold and only can recover if there's a plaintiff who purchased Tinder Gold. Alan Candelari only alleges Tinder Plus. And we've cited this in the record. Judge Nelson, the judge who's actually overseeing the Candelari case, has pointed out that Candelari has only alleged Tinder Plus. If he wants to assert a claim for Tinder Gold, he's going to have to amend his complaint. If he does, Tinder will move to compel, because Mr. Candelari did agree to the terms of use before his Tinder Gold purchase. So maybe the Tinder Gold people have to leave the Candelari class, but can you talk about the rest of the Candelari class? What is the state procedure for when you can still compel arbitration when it's been litigated for this long? Well, as to Mr. Candelari's existing purchase, we conceived we'd have a hard time at this juncture moving to compel arbitration as to Mr. Candelari. Now, Mr. Candelari made additional purchases of Tinder Plus after he agreed to the terms of Tinder's terms of use, so he could still be subject to a motion to compel should he amend his complaint to assert those additional Tinder Plus purchases. But at most, you have Mr. Candelari as an individual not subject to the sign-and-wrap method of agreeing to the terms of use. But I would point out that Judge Nelson – again, this is the judge who's actually overseeing the Candelari case – she has noted, among other things, that in connection with class certification of the Candelari case, it is a potential individual issue as to whether the people who did not agree to the Tinder terms of use via sign-and-wrap, whether there's an individual issue that precludes class certification as to those browse-wrap consumers, because it's an individual question whether they were aware of the terms of use. Your time is up. I'm going to give my colleague a chance to ask any additional questions as well, but I want to ask you this perhaps impolitic question, but I think it's one I have to ask. As my colleague here has suggested, one interpretation of what Judge Walter did in this case was basically to say the words, but to defy our previous panel mandate. If, arguendo, we were to conclude that, would this be an appropriate case to send it back to a different district judge, or do we stay with Judge Walter? The case should definitely stay with Judge Walter for two reasons. One, he does have a long history with the case and knows the issues well. And two, the limited instances where this court has remanded a case and reassigned it have involved circumstances a lot more egregious than Your Honor's hypothetical. This has not been a willful, repeated refusal to follow the court's mandate. In fact, I would argue that Judge Walter did exactly what was required. He took a fresh look at the settlement under much improved terms, and again, for the benefit of the class members. This is nothing like the previous settlement. $330,000 per class member on a claim for which damages have never been awarded in any court. Okay. Do either of my colleagues have additional questions? I'm sure we could spend a whole day here asking additional questions, but we don't have that, so we thank you for your argument. Anybody else over there talking? I think this is your side, so we'll hear from the objectors one last time for a brief response. Okay. I will try to be brief. You'll have to. Just to start at the end, what's more egregious than following the dissent rather than the panel decision? This case should certainly go back to a new judge. Just a few other things with respect to the class certification. The original class certification order specifically had certified it for settlement purposes only. That's what it says in the 2019 order, and so by vacating the settlement, that settlement class was definitely reversed. And again, here what we have is Kim from an exceedingly weak position where maybe, maybe, maybe somewhere down the line, she could get the motion to compel arbitration overturned, but she can't because she waived the formation argument. She waived unconscionability. You can see this in docket 34 of the district court. That's her belated attempt to raise formation. Docket 40 is the district court finding it was waived, whereas on the other hand, you have Candelaria in a very strong position where maybe, maybe, maybe, maybe down the road, the Supreme Court would grant review and reverse, even though Candelaria is based on other California Supreme Court judges. From your perspective, even if Kim were ultimately able to overturn the motion to compel, it doesn't matter because she's already done so much damage to the case that it ought to be removed anyway. Is that right? She has repeatedly settled in a way that gets her attorneys $1 million and gets most class members exactly zero. Other questions by my colleagues? Again, there's a lot we could ask all of you. We thank you for your argument. Very helpful to all of us. The case just argued is submitted and the court stands in recess for the day. All rise.
judges: SMITH, FRIEDLAND, MILLER